JAMES J. DAVIS AND PEGGY DAVIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20161–81.     Filed October 26, 1983.

James J. Davis and Peggy Davis, pro se.
*Wayne R. Appleman*, for the respondent.

PARKER, *Judge*: Respondent has determined the following deficiencies in, and additions to, petitioners' Federal income taxes:

| Year | Deficiency | Sec. 6651(a)[1] | Sec. 6653(a)[2] |
|------|-----------|-----------------|-----------------|
| 1976 | $7,288 | 0 | $364 |
| 1977 | 11,902 | 0 | 780 |
| 1978 | 11,422 | 0 | 571 |
| 1979 | 11,989 | $304 | 805 |

The following issues are presented for our determination: (1) Whether petitioners are entitled to charitable contributions deductions under section 170 for amounts allegedly given to the Universal Life Church; (2) whether petitioners omitted interest and dividend income from their 1978 and 1979 joint

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

[2]In the statutory notice, this addition was mislabeled in one place as the sec. 6653(*b*) addition. However, the computations therein and the explanation of adjustments made it clear that respondent had· determined only the 5-percent sec. 6653(a) addition, and respondent conceded this in his answer to the petition.

returns; (3) whether petitioners are liable for the delinquency addition under section 6651(a) for 1979; and (4) whether petitioners are liable for the negligence addition under section 6653(a) for all 4 years. On brief, petitioners ask the Court to reconsider various evidentiary rulings made at trial, and we shall address those questions prior to dealing with the substantive issues.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners resided in Anchorage, Alaska, at the time they filed their petition in this case. Petitioners filed joint Federal income tax returns for the calendar years 1976, 1977, 1978, and 1979 with the Internal Revenue Service. Petitioners signed their 1979 return on June 30, 1980, and the Internal Revenue Service Center at Ogden, Utah, received their 1979 return on July 7, 1980.

During all of the years in issue, petitioner James J. Davis (Mr. Davis) was employed in Alaska by Page Communications-Alaska, Inc., and he resided in Alaska. During 1976 and part of 1977, petitioner Peggy Davis (Mrs. Davis) worked as a real estate broker and resided in Cocoa Beach, Fla. Sometime in 1977, she moved herself and her two children to Alaska to be with Mr. Davis. Mrs. Davis worked for various employers in Alaska for the remainder of 1977 and during 1978 and 1979.

Mrs. Davis received an honorary Doctor of Divinity "degree" from the Universal Life Church, Inc. (ULC, Inc.), dated June 3, 1975. That document, No. 12,477, purported to be signed by Kirby J. Hensley, D.D., President, Universal Life Church, Inc., whose headquarters was listed on the document as P.O. Box 3528, Phoenix, Ariz. 85030. Petitioners received another document, No. 13,470, dated September 4, 1975, from ULC, Inc., labeled as a "Charter" that provided:

## CHARTER

This is to certify that *Universal Life Church* [Name of Church] of *Cocoa Beach* State or Province of *Florida* has been granted by Universal Life Church, Inc., Modesto.

That document listed the headquarters of ULC, Inc., as 601 Third Street, Modesto, Calif. 95351. Mrs. Davis also received a Doctor of Universal Life "degree," dated September 8, 1975, from ULC, Inc. That document referred to her as the "Reverend Peggy Davis" and was also purportedly signed by Kirby J. Hensley, D.D., President, Universal Life Church, Inc., whose headquarters was listed on the document as P.O. Box 3528, Phoenix, Ariz. 85030. While we have referred to both the entity in Modesto, Calif., and that in Phoenix, Ariz., as "ULC, Inc.," the record does not establish whether this is one corporation or two separate corporations. The record does not establish that petitioners ever set up a corporation or other separate legal entity after receiving their charter for the Universal Life Church of Cocoa Beach, Fla.

During the years 1976 through 1979, Mrs. Davis had sole signatory control over a checking account (No. 52-0-883-4) in the name of Universal Life Church, P.O. Box 335, Cocoa Beach, Fla. 32931, with the United National Bank in Cocoa Beach, Fla. That account was *not* in the name of ULC, Inc., nor in the name of the Universal Life Church, Inc., of Modesto, Calif. The address listed for this account was petitioners' post office box number in Cocoa Beach, Fla.

During 1977, 1978, and 1979, Mrs. Davis had sole signatory control over a checking account (No. 00-04627-2) in the name of Universal Life Church, 1-D-6 Fairview Manor Apts., Fairbanks, Alaska 99701, or P.O. Box 2757, Fairbanks, Alaska 99707, with the First National Bank of Fairbanks in Fairbanks, Alaska. That account was *not* in the name of ULC, Inc., nor in the name of the Universal Life Church, Inc., of Modesto, Calif. The address listed for this account was an apartment in Fairbanks where Mrs. Davis had resided when she first moved to Alaska.

In 1979, Mrs. Davis had signatory control over six certificate-of-deposit accounts in the name of Universal Life Church with the Arctic First Federal Savings & Loan Association in Fairbanks, Alaska. Those certificate-of-deposit accounts were *not* in the name of ULC, Inc., nor in the name of the Universal Life Church, Inc., of Modesto, California. Each account was opened with a deposit of $10,000. Five of these certificates of deposit were purchased with funds from the Universal Life Church account at First National Bank of Fairbanks over

which Mrs. Davis had sole signatory power. One of these five accounts earned interest in the amount of $473.49 during 1979. The address shown for all six accounts was Mrs. Davis' post office box number in Fairbanks.

Neither the Universal Life Church, Inc., of Modesto, Calif. (ULC Modesto), nor ULC, Inc. (which may be the same entity as ULC Modesto), had any control over, or ownership interest in, any of the Universal Life Church accounts over which Mrs. Davis had signatory authority. ULC Modesto left to petitioners the manner in which petitioners' Universal Life Church "congregation" would raise and spend money. The record does not establish whether or not petitioners had a Universal Life Church "congregation" in Cocoa Beach, Fla., or in Alaska during the years before the Court.

On December 27, 1976, petitioners took out a loan in the amount of $28,300 with the First Federal Savings & Loan Association in Cocoa Beach, Fla. They used the funds to purchase a condominium in Cocoa Beach. Petitioners continued to own the condominium during 1977, 1978, and 1979. Mrs. Davis paid at least part of the mortgage payments on the condominium with checks from the Universal Life Church accounts, over which she had sole signatory authority. Petitioners deducted the interest from this mortgage loan on their 1976, 1977, 1978, and 1979 joint returns.

During the years in issue, Mr. Davis maintained a checking account at the Alaska National Bank of the North in Fairbanks, Alaska. During 1978 and 1979, Mr. Davis also maintained a checking account at the United National Bank in Cocoa Beach, Fla. During 1976, 1977, and 1978, petitioners maintained a joint checking account at the United National Bank in Cocoa Beach. During 1978 and 1979, Mrs. Davis maintained a checking account at the First National Bank of Fairbanks in Fairbanks, Alaska. During the years in issue, petitioners used these various personal checking accounts and the two Universal Life Church accounts over which Mrs. Davis had sole signatory power interchangeably to pay various personal expenses, including mortgage loan payments on petitioners' Cocoa Beach condominium, telephone and utility expenses, credit card payments (American Express, Sears-Roebuck, J. C. Penney, Montgomery Ward), newspapers, and payments on personal loans. Mrs. Davis also drew on her

Universal Life Church accounts many checks in large amounts made out to cash, to petitioners, and to their children.[3]

In June of 1977, petitioners opened a joint account in Mr. Davis' name with the Alaska Teamsters Federal Credit Union. Petitioners earned interest on their account with the Alaska Teamsters Federal Credit Union during 1978 and 1979 in the respective amounts of $263.55 and $1,795.68. Petitioners reported no interest income on their 1978 and 1979 joint returns.

On October 16, 1979, Mr. Davis opened an account in his own name with Dean Witter Reynolds Inc. Mr. Davis earned $205 of "nonqualifying" dividends[4] on his account with Dean Witter during 1979. Petitioners reported no dividend income on their 1979 joint return.

During the years in issue, Mr. Davis wrote checks on his personal account at the Alaska National Bank of the North payable to the Universal Life Church, totaling the following amounts:

| Year | Total amount |
| --- | --- |
| 1976 | $25,500 |
| 1977 | 30,000 |
| 1978 | 40,000 |
| 1979 | 40,000 |

With the exception of one check for $25,000 in 1977, all of these checks were deposited to the Universal Life Church checking accounts under the sole signatory control of Mrs. Davis. The $25,000 check in 1977 was endorsed by Mrs. Davis at the First National Bank of Fairbanks, where one of her Universal Life Church accounts was located, and Mrs. Davis used the proceeds to purchase a cashier's check. The record does not establish that ULC Modesto or ULC, Inc. (which may be the same entity as ULC Modesto), ever received any money from petitioners during the years in issue.

---

[3]Only partial bank records of the two Universal Life Church accounts were submitted in evidence, but even from these incomplete records, the pattern of use of the Universal Life Church accounts for petitioners' personal expenditures in all 4 years was clearly established.

[4]The parties appear to agree that these "dividends" do not qualify for the dividend exclusion. See sec. 116 as in effect during 1979.

Petitioners claimed deductions for charitable contributions to the Universal Life Church on their returns for 1976, 1977, 1978, and 1979 in the respective amounts of $21,768, $29,232, $28,469, and $29,531.[5] In 1976 and 1979, the "recipient" was identified as the "Universal Life Church." In 1977 and 1978, the "recipient" was identified as the "Universal Life Church of California." In his statutory notice, respondent disallowed petitioners' claimed charitable deductions to the Universal Life Church for all 4 years and determined that petitioners were liable for the delinquency addition (sec. 6651(a)) for 1979, and for the negligence addition (sec. 6653(a)) for all 4 years. At trial, we granted respondent's oral motion to amend his answer to assert increased deficiencies for the years 1978 and 1979, along with corresponding increases to the additions to tax for those years, based on unreported interest and dividend income.

## OPINION

## I. Evidentiary Rulings

On brief, petitioners ask the Court to reconsider three evidentiary rulings made at trial: (1) The denial of petitioners' motion to quash respondent's subpoenas requiring them to testify; (2) the denial of petitioners' motion to exclude from evidence certain "church" banking records of the "Universal Life Church"; and (3) the exclusion from evidence of certain documents from the Universal Life Church, Inc., of Modesto, Calif. (ULC Modesto), purporting to evidence its "receipt" of petitioners' alleged contributions to it for the years before the Court.

A. *Subpoenas to petitioners.*—Petitioners' motion to quash the subpoenas to them was based on the Fifth Amendment privilege against self-incrimination. Their argument is meritless. The Fifth Amendment privilege does not justify a blanket refusal to testify, and petitioners presented absolutely nothing to show a real and appreciable danger of self-incrimination.

---

[5]The charitable contributions deductions claimed on the tax returns were in lesser amounts than the amounts Mr. Davis paid into Mrs. Davis' Universal Life Church accounts, because of the percentage limitation on contributions by individual taxpayers. Sec. 170(b)(1). However, petitioners claimed carryovers of any unused "charitable contributions" to the Universal Life Church in subsequent tax years.

We are satisfied that any possible danger of self-incrimination in this case is so remote and speculative that it cannot support a valid Fifth Amendment claim. See *McCoy v. Commissioner*, 696 F.2d 1234, 1236 (9th Cir. 1983), affg. 76 T.C. 1027, 1029 (1981); *Edwards v. Commissioner*, 680 F.2d 1268, 1270 (9th Cir. 1982); *United States v. Neff*, 615 F.2d 1235, 1238 (9th Cir. 1980), cert. denied 447 U.S. 925 (1980); *Rechtzigel v. Commissioner*, 79 T.C. 132, 136–139 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983); *Reiff v. Commissioner*, 77 T.C. 1169, 1174 (1981).

B. *Universal Life Church bank records.*—Petitioners' motion to exclude various banking records of the "Universal Life Church" appears to be based upon arguments of relevance and privilege. Underlying both arguments is petitioners' assertion that these are the records of ULC Modesto or ULC, Inc., not those of petitioners or of their separate Universal Life Church "congregation" or chapter. We have found as a fact that the Universal Life Church accounts over which Mrs. Davis had signatory power were neither owned nor controlled by ULC Modesto or ULC, Inc. Consequently, those records are indeed relevant, both to the issue of whether petitioners have made any charitable contributions and to the issue of whether such "contributions" inured to petitioners' benefit. Moreover, since the bank records were not those of ULC Modesto or ULC, Inc., no possible privilege of that entity (or those entities) is affected. Petitioners have failed to establish that the production of these bank records (of accounts over which Mrs. Davis had the signatory authority) affects any First Amendment privilege of theirs or of their own Universal Life Church "congregation" or chapter. See *United States v. Freedom Church*, 613 F.2d 316, 320 (1st Cir. 1979); *Bronner v. Commissioner*, 72 T.C. 368, 371–372 (1979). Moreover, while we believe there is no infringement in this case, any possible, incidental First Amendment infringement that results from requiring a taxpayer to prove his entitlement to a deduction for charitable contributions is outweighed by the compelling governmental interest in preventing an abuse of the revenue laws. See *United States v. Holmes*, 614 F.2d 985, 989–990 (5th Cir. 1980); *Bubbling Well Church v. Commissioner*, 74 T.C. 531, 535, 538–539 (1980), affd. 670 F.2d 104 (9th Cir. 1981). See also *United States v. Lee*, 455 U.S. 252 (1982). Finally these bank records

are not protected by the Fourth Amendment, nor by the Bank Secrecy Act.[6] See *United States v. Miller*, 425 U.S. 435 (1976).

C. *"Receipts" from ULC Modesto.*—Petitioners argue that the documents purportedly evidencing their contributions to ULC Modesto should be admitted as business records of that entity. See rule 803(6), Fed. R. Evid.[7] Those purported receipts were properly excluded. First of all, the proponent of those documents, ULC Modesto's president Kirby J. Hensley, could not provide the requisite foundation testimony as "the custodian or other qualified witness." Rule 803(6), Fed. R. Evid. Hensley testified that he cannot read or write. Thus, he was unable to testify how such records were obstensibly kept in the ordinary course of ULC Modesto's business. More importantly, from his testimony, it is clear that the purported receipts offered into evidence were prepared shortly before the trial and prepared solely for purposes of this trial and thus do not constitute business records. And even assuming that the records from which the figures in the purported receipts were taken may have constituted business records of ULC Modesto, Hensley did not produce those records.

In view of Hensley's testimony as to the source of the information in those records and how ULC Modesto obtained the information, we seriously doubt that such records, even if produced, would constitute business records of ULC Modesto. Rule 803(6), Federal Rules of Evidence, provides an exception to the business records exception—"unless the source of information or the method or circumstances of preparation

---

[6]Bank Secrecy Act of 1970, Pub. L. 91–508, 84 Stat. 1114, codified at 12 U.S.C. sec. 1829b (1976).

[7]Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

$$* \qquad * \qquad * \qquad * \qquad * \qquad * \qquad *$$

(6) *Records of regularly conducted activity.*—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

indicate lack of trustworthiness." In view of the source of the information for these purported receipts (unverified information purportedly furnished by petitioners themselves), we would accord these records little weight even if they were received into evidence.[8]

Accordingly, we adhere to our previous evidentiary rulings.

## II. Charitable Contributions

Petitioners argue that their claimed deductions for payments to "Universal Life Church" are allowable charitable contributions. Petitioners apparently are not directly claiming that ULC Modesto's specific exemption (see *Universal Life Church, Inc. v. United States*, 372 F. Supp. 770 (E.D. Cal. 1974)) constitutes a group exemption for ULC Modesto and all of its chapters. ULC Modesto's exemption is not a group exemption.[9] Petitioners' primary argument is that the contributions were made to ULC Modesto, itself, and not to their own Universal Life Church "congregation" or chapter as a separate entity. Petitioners thus argue that they made payments to ULC Modesto, an organization possessing a charitable exemption under section 501(c)(3) and listed in respondent's Publication No. 78.

Deductions are a matter of legislative grace, and taxpayers must satisfy the specific statutory requirements of the deductions they claim. *Deputy v. du Pont*, 308 U.S. 488 (1940); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435 (1934). Taxpayers bear the burden of proving their entitlement to the deductions they claim. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). These rules apply with equal force to deductions claimed for charitable contributions. Thus, petitioners must

---

[8] See also *Mustain v. Commissioner*, T.C. Memo. 1982-670, and *Owens v. Commissioner*, T.C. Memo. 1982-671.

[9] We have so held in numerous Memorandum Opinions. See *Mendenhall v. Commissioner*, T.C. Memo. 1983-491; *Solanne v. Commissioner*, T.C. Memo. 1983-67; *Murphy v. Commissioner*, T.C. Memo. 1983-59; *Owens v. Commissioner, supra*; *Mustain v. Commissioner, supra*; *Magin v. Commissioner*, T.C. Memo. 1982-383; *Hall v. Commissioner*, T.C. Memo. 1982-337; *Kellman v. Commissioner*, T.C. Memo. 1981-615; *Riemers v. Commissioner*, T.C. Memo. 1981-456; *Brown v. Commissioner*, T.C. Memo. 1980-553. See also *United States v. Toy National Bank*, an unreported case (N.D. Iowa 1979, 43 AFTR2d 79-954, 79-1 USTC par. 9344); sec. 601.201(n)(8), Statement of Procedural Rules.

prove that they made charitable contributions to ULC Modesto. They have completely failed to satisfy their burden of proof.

With one exception, all of the checks that Mr. Davis made out to "Universal Life Church" were deposited into the Universal Life Church accounts over which Mrs. Davis had the sole signatory power. In one instance, Mrs. Davis negotiated the check from Mr. Davis and purchased a cashier's check. There is absolutely nothing in the record to support petitioners' argument on brief that Mrs. Davis was signatory on the Universal Life Church accounts only in a fiduciary capacity. As to the one "contribution" not cycled through Mrs. Davis' two Universal Life Church checking accounts, the record does not indicate to whom the cashier's check was made out, nor does the record establish what became of that cashier's check. In the absence of any evidence to that effect, we cannot assume and will not infer that the cashier's check ended up in the hands of ULC Modesto.

Petitioners called as a witness Kirby J. Hensley, the president of ULC Modesto, who testified in broad generalities and conclusory terms that ULC Modesto "controlled" Mrs. Davis' two Universal Life Church accounts. Hensley's sweeping testimony that every ULC chapter is part of ULC Modesto was simply an erroneous legal conclusion on his part that the exemption of ULC Modesto is a group exemption. That is not the case. See note 9. Moreover, Hensley also testified that ULC Modesto left it up to local congregations or chapters to determine the manner in which funds would be raised and spent, "as long as it's done for the right thing," and under the church's doctrine, as described by Hensley, each member determines for himself or herself what is "right." We found Hensley to be an evasive, argumentative witness whose testimony is wholly unworthy of belief. We simply did not find credible Hensley's testimony that as president of ULC Modesto, he "controlled" every ULC congregation in America and in the world. Petitioners have failed to prove that they made *any* contributions to ULC Modesto. *Welch v. Helvering, supra*; Rule 142(a).

Petitioners do not seriously argue that they are entitled to deductions for charitable contributions to their own Universal Life Church "congregation" or chapter, and for good reason.

Petitioners have failed to meet virtually every test of section 170(c)(2).[10]

First, Mrs. Davis' dominion and control over her Universal Life Church checking accounts preclude a finding that there have been any charitable contributions by Mr. Davis or anyone else. The term "charitable contribution" as it is used generally in section 170 is largely synonymous with the term "gift." *Seed v. Commissioner*, 57 T.C. 265, 275 (1971); *DeJong v. Commissioner*, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373, 376–379 (9th Cir. 1962). A gift is generally defined as a voluntary transfer of property to another without consideration. *Seed v. Commissioner, supra* at 275; *DeJong v. Commissioner, supra* at 899. Petitioners' retained control and personal benefit preclude a finding of a gift in this case.

Second, the only documents pertaining to petitioners' Universal Life Church "congregation" or chapter are the "charter" and Mrs. Davis' two "degrees." There is no documentary or other evidence regarding the organization and operation of their chapter or of the distribution of its assets upon dissolution. See *Calvin K. of Oakknoll v. Commissioner*, 69 T.C. 770, 773 (1978), affd. without published opinion 603 F.2d 211 (2d Cir. 1979), cert. denied 444 U.S. 872 (1979); sec. 1.501(c)(3)–1, Income Tax Regs. Petitioners' failure to provide any such documentation or other evidence means they have failed to prove that their "church" was "organized and operated exclusively for religious * * * purposes." Sec. 170(c)(2)(B).[11]

---

[10]As in effect during the years in question, sec. 170(c) provided in pertinent part:

SEC. 170(c). CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

> \*        \*        \*        \*        \*        \*        \*

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * *

[11]See *Owens v. Commissioner*, T.C. Memo. 1982–671, and cases cited therein.

Finally, the record overwhelmingly establishes that the net earnings of petitioners' Universal Life Church "congregation" or chapter inured to their benefit. Sec. 170(c)(2)(C); *Miedaner v. Commissioner*, 81 T.C. 272 (1983); *McGahen v. Commissioner*, 76 T.C. 468, 482–483 (1981), affd. in an unpublished order (3d Cir., Aug. 25, 1983). The record clearly shows the pervasive use of Mrs. Davis' Universal Life Church checking accounts for petitioners' personal and family expenses. We are unpersuaded by petitioners' argument that their use of funds in these accounts represents proper expenditures by their Universal Life Church chapter and thus do not constitute any part of the "net" earnings of their chapter. Petitioners have failed to prove that this use of the Universal Life Church account funds was for a proper exempt purpose, even assuming for purposes of argument that their Universal Life Church chapter is otherwise a qualified organization under section 170(c)(2). And Hensley's conclusory testimony that petitioners' use of such funds was proper was clearly without any personal knowledge and totally without factual basis. We find his testimony unpersuasive and unworthy of belief. Petitioners have failed to establish their entitlement to any deduction for charitable contributions to their separate Universal Life Church "congregation" or chapter for any of the years in issue. *Welch v. Helvering, supra*; Rule 142(a).

We are not, as petitioners suggest, ruling upon ULC Modesto's tax exemption. We simply hold that petitioners have failed to prove they made any contributions to ULC Modesto. Petitioners also argue that by denying their deduction for charitable contributions, we are discriminating against them and their church on the basis of their religious beliefs, in violation of their First Amendment rights. Petitioners are mistaken. Their religious beliefs and the religious doctrines of ULC Modesto or petitioners' Universal Life Church chapter are irrelevant to our decision. Petitioners remain free to espouse their religious doctrines and to solicit support for their cause. As the court pointed out in *United States v. Holmes*, 614 F.2d at 989, petitioners "remain unimpeded in the cerebral sphere." However, when they seek deductions for charitable contributions, they must satisfy the express requirements of section 170, as must all other taxpayers. (See sec. 1.170A–9, Income Tax Regs. See generally

*Miedaner v. Commissioner, supra; McGahen v. Commissioner, supra.*) They have not done so here.

### III. Unreported Interest and Dividend Income

At trial, we granted respondent's motion for increased deficiencies for 1978 and 1979, based on unreported interest and dividend income. Respondent bears the burden of proof on this new matter. Rule 142(a).

The parties stipulated to the existence of petitioners' account at the Alaska Teamsters Federal Credit Union and to Mr. Davis' brokerage account at Dean Witter Reynolds Inc. The stipulated joint exhibits report interest and dividend income earned in those accounts, and representatives from both institutions confirmed this. Both accounts were in Mr. Davis' individual name. Petitioners' returns for 1978 and 1979 reported no interest or dividend income. Accordingly, respondent has established unreported income by petitioners. Petitioners' self-serving and wholly unsubstantiated testimony that they opened these accounts as agents or nominees for ULC Modesto or for their own Universal Life Church chapter is not credible. Respondent has carried his burden with respect to these two items.

With respect to the interest earned on one of the certificates of deposit at Arctic First National Savings & Loan Association, the funds in the account that earned interest were traceable to one of the ULC accounts over which Mrs. Davis had sole signatory power. Mrs. Davis also had signatory authority over that certificate of deposit acccount. While respondent did not produce the signature card for this account to show that Mrs. Davis was the *sole* signatory on this certificate of deposit account, respondent established that the funds used to open that certificate of deposit account came from an account over which she was the *sole* signatory and that she had "signatory control" over the certificate of deposit account. That evidence is sufficient to establish a prima facie case and shift to petitioners the burden of going forward. We think it logical to infer that if there were other signatories or beneficial owners of the certificate of deposit account to whom this interest income might belong, petitioners would have come forward with such information to show that the interest income was not taxable to them. They did not do so, and, accordingly, we

find that the $473.49 of interest income earned on this account in 1979 was includable in petitioners' income for the year.

Thus, we hold that respondent has carried his burden of proof as to the unreported interest and dividend income for 1978 and 1979.

## IV. Additions to Tax

Respondent determined that petitioners were liable for an addition to tax under section 6651(a) in 1979 for the delinquent filing of their return. Petitioners' 1979 return was signed on June 30, 1980, and was not received by the Internal Revenue Service Center until July 7, 1980. The return was due on April 15, 1980. Sec. 6072(a). Petitioners offered no explanation for the delinquent filing of their 1979 return. Accordingly, petitioners have failed to carry their burden of proving that the delinquency was due to reasonable cause and not due to willful neglect. See *Electric & Neon, Inc. v. Commissioner*, 56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); *Fischer v. Commissioner*, 50 T.C. 164, 177 (1968); *Bebb v. Commissioner*, 36 T.C. 170, 173, (1961).

Respondent also determined that petitioners were liable for the section 6653(a) addition for negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proof on this issue. *Bixby v. Commissioner*, 58 T.C. 757, 791-792 (1972); *Rosano v. Commissioner*, 46 T.C. 681, 688 (1966).

Petitioners' unexplained omission of interest and dividend income for 1978 and 1979 alone justifies negligence additions for those years. See *Capodanno v. Commissioner*, 69 T.C. 638, 650 (1978), affd. on other issues 602 F.2d 64 (3d Cir. 1979); *Hughes v. Commissioner*, 27 B.T.A. 1022, 1025, 1028 (1933), affd. sub nom. *Little v. Helvering*, 75 F.2d 436 (8th Cir. 1935). Moreover, petitioners claimed interest deductions for mortgage interest, yet those mortgage payments were paid out of Mrs Davis' Universal Life Church accounts. Petitioners made no attempt to explain their inconsistent action of treating the interest payments as personal deductions while at the same time claiming charitable contributions deductions for the funds Mr. Davis placed into Mrs. Davis' Universal Life Church accounts. We have repeatedly sustained the section 6653(a) addition in cases involving purported charitable contributions

to a "church" that, as here, simply represented use of the funds for personal and family expenses.[12]  Petitioners struck us as reasonably intelligent, well-educated individuals. As such, they must have known they could not claim as charitable contributions deductions amounts they had simply channeled from Mr. Davis to Mrs. Davis and used for their nondeductible personal, family, and living expenses. We are satisfied that the negligence addition is fully justified in this case.[13]

Accordingly, to reflect our holdings,

*Decision will be entered under Rule 155.*

---

[12]See *Murphy v. Commissioner,* T.C. Memo. 1983–59; *Mustain v. Commissioner,* T.C. Memo. 1982–670; *Harcourt v. Commissioner,* T.C. Memo. 1982–621; *Neil v. Commissioner,* T.C. Memo. 1982-562; *Hall v. Commissioner,* T.C. Memo. 1982–337; *Schilberg v. Commissioner,* T.C. Memo. 1982–336; *McElhannon v. Commissioner,* T.C. Memo. 1982–196; *Daly v. Commissioner,* T.C. Memo. 1982–59; *Riemers v. Commissioner,* T.C. Memo. 1981–456.

[13]Compare *Stephenson v. Commissioner,* 79 T.C. 995 (1982), on appeal (6th Cir., June 7, 1983), sustaining the sec. 6653(b) fraud addition in a case involving assignment of income and claimed charitable contributions to a purported "church." At the close of trial, respondent moved to amend the pleadings to assert fraud under sec. 6653(b). We denied his motion because of his tardiness in making it.