EDWARD UHRIG AND EVELYN UHRIG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Uhrig v. Commissioner
Docket No. 15858-82.
United States Tax Court
T.C. Memo 1985-206; 1985 Tax Ct. Memo LEXIS 428; 49 T.C.M. (CCH) 1355; T.C.M. (RIA) 85206; April 29, 1985. *428 Held, because petitioner failed to carry his burden of proving that certain charitable contributions allegedly made to the Glenelg Church of Divine Blessings were actually made to an organization organized and operated exclusively for religious purposes, no part of the net earnings of which inured to the benefit of any private individual, petitioner is not entitled to a deduction for contributions allegedly made to that organization in 1978. Held further, petitioner is liable for the addition to tax under sec. 6653(a)(1), I.R.C. 1954, for the year in issue. Held further, damages are awarded under sec. 6673. Edward Uhrig, pro se. Daniel J. Wiles, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: *430 In his notice of deficiency dated April 8, 1982, respondent determined a deficiency of $6,501 in petitioners' 1978 Federal income tax and an addition to tax of $325.05 pursuant to section 6653(a)(1), I.R.C. 1954. The issues to be decided are: (1) whether petitioners are entitled to a deduction for certain charitable contributions that they claimed on their 1978 return, and (2) whether petitioners are liable for the addition to tax for negligence. FINDINGS OF FACT Edward Uhrig and Evelyn Uhrig, husband and wife, resided at 3893 Jumpers Hill Lane, Ellicott City, Maryland at the time they filed their petition herein. They filed a timely joint Federal income tax return for the year 1978 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. As used hereinafter, "petitioner" will refer to Edward Uhrig. In August 1975 petitioner received a document from the Universal Life Church, Inc., Modesto (hereinafter ULC Modesto), certifying that "Glenelg Universal Life Church" (hereinafter Glenelg ULC) of Maryland had been granted a charter. At the same time petitioner received credentials of ordination from ULC Modesto. A document purporting *431 to be minutes of the board of directors of GlenelgULC was prepared and dated August 5, 1975. The document reflects a decision by the board to pay the following expenses to petitioner, as minister: 1. A housing allowance of $350/mo. which could increase slightly as taxes, etc. go up. 2. Housing repairs, new furnishings, and equipment. 3. Travel expenses including auto repairs and gas. 4. Utilities. On December 28, 1976, a checking account was opened by petitioner in the name of "Glenelg Church of Divine Blessings" (hereinafter GCDB) at the Commercial and Farmers Bank, Ellicott City, Maryland. Petitioner had control over the GCDB account throughout the year in issue and made all deposits to and withdrawals from said account. After the GCDB account was opened, a document entitled "Articles of Organization," which purported to establish a church to be known as "Church of Divine Blessings," was prepared, presumably by petitioner as an initial trustee of the church. Nowhere in that document is there any mention of ULC Modesto or of Glenelg ULC. During the year 1978 petitioner wrote several checks on his own account made payable to "Glenelg Church of Divine Blessings. *432 " Some of these checks were deposited in the GCDB account. However, others were personally endorsed by petitioner in the name of "Glenelg Church of Divine Blessings" and converted into cash, which petitioner retained for some unspecified purpose. Most, if not all, of the withdrawals from the GCDB account, which as previously stated were made by petitioner, were used to pay petitioner $390 per month [1] and to pay such expenses as petitioner's personal utility, telephone, automobile repair, maintenance, and gasoline expenses. On his Schedule A attached to his 1978 Federal income tax return, petitioner claimed contributions as follows: "Church Plus"
$20,922.50
"Church Weekly"
160.00
"Door To Door"
5.00
$21,087.50
The total claimed contributions equalled approximately one-half of petitioner's 1978 adjusted gross income. Attached to petitioner's 1978 return were xeroxed copies of the fronts of checks in the total amount of $20,500 made *433 payable to "Glenelg Church of Divine Blessings." By the time of the trial herein, petitioner had altered the originals of most of these checks to read "Glenelg Church of Divine Blessings of the ULC." Respondent disallowed the claimed charitable contribution deduction in full. He has since conceded that petitioner is entitled to a charitable contribution deduction of $349 for contributions made to a qualified organization known as the St. Louis Church. Petitioner engaged in various tactics to delay the proceedings in this Court. He lodged with the respondent and this Court a number of documents containing nothing more than the typical, frivolous arguments raised by tax protesters generally. Petitioner attended an inital hearing held by the Court. However, he thereafter failed to attend any further session of trial in his case. OPINION The first issue for decision is whether petitioner is entitled to a charitable contribution deduction under section 170(a) for contributions allegedly made to GCDB. Petitioner obviously contends that he is entitled to such a deduction for the year in issue. However, it is unclear whether, in so contending, petitioner is relying on a connection *434 between GCDB and ULC Modesto or is relying on an implicit assertion that contributions to GCDB were actually contributions to ULC Modesto. To the extent that petitioner is relying on either of these theories, we reject them at the outset. With respect to the first of the foregoing theories, it is unclear from the record whether there actually was any sort of connection between GCDB and ULC Modesto, but even assuming, arguendo, that such a connection existed, we have held on a number of occasions that ULC Modesto's specific exemption is not a group exemption. [2] See Davis v. Commissioner,81 T.C. 806, 815 (1983), on appeal (9th Cir. June 25, 1984), and cases cited therein. With respect to the second of the foregoing theories, petitioner sought to introduce into evidence a document, written on a letterhead of ULC Modesto, purporting to acknowledge contributions to ULC Modesto totaling $20,500. The Court reserved ruling on the admissibility *435 of the document. An examination of that document reveals that it is totally devoid of trustworthiness. The document is a "fill-in-the-blank" preprinted form with petitioner's name, the year in issue, and the amount of the alleged contribution inserted by a different typewriter. There is nothing in the record to establish whether the purported signature of the vice president of ULC Modesto was applied before or after the blanks were filled in.It is not unlikely in our view that petitioner filled in the blanks to suit himself. At any rate, the document is not admissible into evidence because of its hearsay character. Davis v. Commissioner,supra at 814-815. Petitioner offered no other evidence to establish that the contributions in question were made to ULC Modesto. Accordingly, the question to be decided in determining whether petitioner is entitled to the claimed contribution deduction is whether he is entitled to a deduction for contributions made to GCDB. To establish that he is entitled to the claimed contribution deduction, petitioner has the burden of proving *436 that contributions actually were made to an organization organized and operated exclusively for religious purposes, no part of the net earnings of which inured to the benefit of any private individual within the meaning of section 170(a)(1), (c)(2)(B) and (C). Welch v. Helvering,290 U.S. 111 (1933). Petitioner has failed to carry his burden of proof on all scores. First, petitioner failed to prove that he actually gave or contributed anything to GCDB. Petitioner indicated in his testimony that all of the checks drawn on his personal account and made payable to GCDB were deposited in the GCDB account. However, when the backs of the checks were revealed by respondent at trial, it became readily apparent that some of the checks were cashed by petitioner. When confronted with this evidence, petitioner pleaded lack of memory. Furthermore, it is clear from the record that petitioner never parted with dominion and control over whatever funds did eventually make their way into the GCDB account. The funds were simply transferred from one of petitioner's accounts to another. Second, petitioner presented no evidence to show that GCDB was operated exclusively for religious *437 purposes within the meaning of section 170(c)(2)(B). Petitioner testified that he, in his capacity as minister of GCDB, performed certain duties and acts that "great big churches" typically perform; however, he did not elaborate in any credible manner on such testimony. Finally, petitioner failed to show that no part of the net earnings of GCDB inured to the benefit of any private individual within the meaning of section 170(c)(2)(C). Withdrawals were made from the GCDB account to pay petitioner $390 per month and to pay various personal expenses of petitioner. Petitioner presented no evidence that these payments represented compensation for services he performed as a minister of GCDB. In fact, we wholeheartedly agree with respondent that petitioner, through the use of GCDB, simply elected to pay his nondeductible personal expenses out of his "church pocket" rather than his personal checking account. Thus, petitioner has failed to prove that no part of the net earnings of GCDB inured to his private benefit. The next issue for decision is whether petitioner is liable for the addition to tax for negligence under section 6653(a)(1). *438 Petitioner bears the burden of proving that his 1978 underpayment was not due to negligence. Rule 142(a), Tax Court Rules of Practice and Procedure; Enoch v. Commissioner,57 T.C. 781, 802 (1972). Suffice it to say that petitioner's contention that tax avoidance is being exercised by most persons of ordinary prudence is not a valid defense to the addition to tax for negligence. Petitioner having failed to present any evidence with respect to this issue, we sustain respondent's determination that petitioner is liable for the addition to tax for negligence. A review of the record herein leads us to conclude that petitioner knew his case to be premised on frivolous ground and that he instituted this proceeding primarily for delay. Hence, we award damages to the United States in the amount of $3,000 pursuant to the provisions of section 6673. Decision will be entered under Rule 155.
Footnotes
1. Although the minutes of the board of directors of GlenelgULC stated that petitioner was to receive a housing allowance of $350 per month, petitioner testified that he received $390 per month from the GCDB account.↩
2. On September 4, 1984, the Internal Revenue Service revoked its prior determination that the Universal Life Church, Inc. was a qualified organization under sec. 170(c)(2). Announcement 84-90, 1984-36 I.R.B. 32↩.