ROY ADAMSON AND CATHERINE ADAMSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adamson v. Commissioner
Docket Nos. 3207-84, 42508-84.
United States Tax Court
T.C. Memo 1986-489; 1986 Tax Ct. Memo LEXIS 117; 52 T.C.M. (CCH) 699; T.C.M. (RIA) 86489; September 29, 1986. *117 Held, Ps failed to prove that they made any charitable contributions to Universal Life Church, Inc., of Modesto, California; Held further, Ps are liable for additions to tax for negligence or intentional disregard of rules and regulations under sections 6653(a)(1) and (2), I.R.C. 1954; Held further, damages in the amount of $5,000 awarded to the United States under section 6673, I.R.C. 1954, against Ps for instituting and maintaining proceedings before the Court in which Ps' position is frivolous and groundless. Peter R. Stromer, for the petitioners. M. Kendall Williams, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Section 6653(a)(1) [1]
Section 6653(a)(2)
Section 6661
1981
$8,579.00
$428.95
50 percent of the
interest due on an
underpayment of
$8,579
1983
11,896.59
735.69
50 percent of the
interest due on an
underpayment of
$11,896.59
$1,189.65
*119 In addition, respondent seeks the award of damages to the United States under section 6673. The issues for decision are (1) the deductibility of 1981 and 1983 contributions to the Universal Life Church; (2) additions to tax for negligence or intentional disregard of rules and regulations under sections 6653(a)(1) and (2) and substantial understatement of tax liability under section 6661; and (3) damages under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated by reference. On their 1981 and 1983 joint income tax returns, petitioners claimed contributions of $24,000.00 and $30,560.00, respectively, to the Universal Life Church. Petitioners' total income from wages and adjusted gross income for those years was $51,089.00 and $73,759.80, respectively. During the years in question, petitioner Roy Adamson (Roy) was employed by Northrop Corporation *120 as a research specialist. He held a masters degree in Propulsion Engineering from the University of Southern California. Petitioner Catherine Adamson (Catherine) is an electrical designer by profession and attended Santa Monica City College for three years. During 1981 and 1983 she was employed by Consultants and Designers, Inc. In 1981, Catherine also worked for a second company. In 1980 petitioners opened an account at the Yosemite Bank in the name of their local chapter of the Universal Life Church. Petitioners and their daughter, Susan, had sole signatory authority on that account. Catherine and her children received Universal Life Church minister credentials through the mail following their attendance at a psychic fair in 1979. Petitioners received their local charter on Paril 7, 1980. Petitioners joined the Universal Life Church to further their faith-healing practice and to study Zen Buddhism. Petitioners paid for their personal and living expenses out of their "contributions" to the Universal Life Church.Disbursements were made to pay rental expenses, land payments, Roy's weekend travel, auto supplies and repairs. Additionally, disbursements were made to pay for *121 a television set, karate lessons, Catherine's travel expenses, children's summer school, stable board and rations, motel expenses, motor home payments and computer software and hardware. OPINION Petitioners assert that they made cash contributions of $24,000 and $30,560 in 1981 and 1983, respectively, to the Universal Life Church. While petitioners apparently received some sort of documentation from the Universal Life Church authorizing them to form their own local church, the contributions are claimed to have been made to the Universal Life Church in Modesto, California (ULC Modesto) which, according to Catherine's testimony, is "all one." [2]
While not formally part of the evidence in this case, petitioners attached to their petitions a number of documents which purport to be receipts from ULC Modesto for the amounts which petitioners claim to have *122 contributed and upon which their claimed charitable deductions are based. Catherine testified that sometime in 1980 she and her husband opened a bank account for their local ULC church at Yosemite Bank in Hornitos, California, on which the authorized signatories were Roy, Catherine and their daughter, Susan. Petitioners then used the monies deposited in the account to pay their personal and living expenses. Catherine testified that the Universal Life Church required the filing by its local chapters of guarterly reports. These reports at the end of the year were then purportedly tabulated to establish in some way the annual contribution received. It is apparent that petitioners are attempting to claim deductions for contributions to the ULC Modesto, rather than to their own chapter. In Catherine's words, "[i]t's all one." The facts of this case are almost identical to those in Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 717 F.2d 931 (9th Cir. 1985), where the taxpayers failed to convince the Court that they had made charitable contributions to the ULCModesto through their own local chapter, and had not used the *123 local chapter as a subterfuge for deducting their own personal and living expenses. Petitioners have the burden of proof on this issue. Rule 142(a). No useful purpose would be served by repeating here out Davis analysis of the reasons why funds raised and spent by local ULC chapters as the creators of those chapters see fit may not be claimed as charitable contributions under section 170(c)(2) or any other provision of the Internal Revenue Code. We are satisfied that petitioners in the case before us simply deposited their pay checks in the Yosemite Bank account and used the funds as they saw fit for their own personal, living and family expenses. Such expenses are not deductible. Section 262. Respondent determined that petitioners are liable for additions to tax for negligence or intentional rules and regulations under section 6653(a)(1) and (2). Petitioners have the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757 (1972). Petitioners are well educated and intelligent individuals, together capable of earning over $50,000 in 1981 and over $70,000 in 1983. As such, they must have known that they could not deduct as charitable contributions *124 amounts they had simply used for their own personal purposes. Davis v. Commissioner,supra; see Elliott v. Commissioner,T.C. Memo. 1985-493. We therefore hold for respondent on this issue. In the deficiency notice respondent determined an addition to tax for 1983 under section 6661 for substantial understatement of income tax liability. On brief, respondent does not pursue this addition to tax and we accordingly assume that it has been abandoned. The final issue for decision is whether damages should be awarded to the United States pursuant to section 6673. We believe that they should be. Section 6673 provides, in part, that "[w]henever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision." Petitioners were cautioned by respondent's counsel before trial that section 6673 damages would be sought. Petitioners' counsel, Peter R. Stromer, has represented numerous taxpayers *125 in this Court in whose cases ULC arguments similar or identical to those presented here have been unsuccessfully advanced, and he and petitioners were well aware of the speciousness of their claims in this case. Petitioners and their counsel have abused the process of this Court and wasted its resources and those of respondent. Damages are therefore awarded to the United States under section 6673 in the amount of $5,000. See Pryor v. Commissioner,T.C. Memo. 1985-489. One final matter. At the conclusion of the trial the Court addressed the following remarks to Mr. Stromer: I can't imagine a case in which there's a better example of when damages ought to be imposed.* * * I think it's professionally very irresponsible for you to not advise these people of the absolute frivolity and foolishness of this kind of a case. And I'm really shocked, I must tell you. In Kalgaard v. Commissioner,764 F.2d 1322 (9th Cir. 1985), affirming T.C. Memo. 1984-283, which involved ULC arguments like those advanced here and in which Mr. Stromer represented the taxpayers, the Ninth Circuit Court of Appeals announced that "We affirm the holdings of *126 the Tax Court. We also impose double costs and award to the Commissioner $1,000.00 in attorneys' fees, plaintiff and his counsel [Mr. Stromer] being jointly and severally liable." The Ninth Circuit is the Court to which an appeal in this case would lie. In Larsen v. Commissioner,765 F.2d 939 (9th Cir. 1985), affirming an unreported order of dismissal by this Court, Mr. Stromer again advanced similar ULC arguments on behalf of the taxpayer-appellant and the Ninth Circuit Court of Appeals held that "[t]his Court finds taxpayer's arguments and appeal to be frivolous." The Court further stated that "[b]oth the taxpayer and his attorney [Mr. Stromer] should have known this case to be frivolous. As in Kalgaard, therefore, we impose double costs and award the Commissioner $1,000 in attorney's fees, taxpayer and his counsel being jointly and severally liable." It is difficult to fathom counsel's motives or objective in repeatedly presenting at substantial cost to his taxpayer-clients frivolous ULC cases and appeals to this Court and the Courts of Appeal. We can only surmise that by doing so he hopes to postpone assessment of the tax for as long as possible *127 and to harass and vex the Courts and the Commissioner in the process. In any event, counsel and others similarly situated are hereby reminded and put on notice that commencing July 1, 1986, counsel will be held fully accountable for the bona fides of pleadings which they sign and file in this Court on and after such date. Rule 33(b) reads as follows: (b) Effect of Signature: The signature of counsel or a party constitutes a certificate by him that he has read the pleading; that, to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. The signature of counsel also constitutes a representation by him that he is authorized to represent the party or parties on whose behalf the pleading is filed. If a pleading is not signed, it shall be stricken, unless it is signed promptly after the omission is called to the attention of the pleader. If a pleading *128 is signed in violation of this Rule, the Court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable counsel's fees. [Emphasis supplied.] The Court will not hesitate to impose an appropriate sanction upon offending counsel in appropriate cases in the future. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954 in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Universal Life Church, Inc., of Modesto, California was determined to be tax exempt under section 501(c)(3) in Univeral Life Church, Inc. v. United States,372 F.Supp. 770↩ (E.D. Cal. 1974). The Internal Revenue Service has withdrawn its recognition of the tax exempt status of the Modesto organization.