OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

August 5, 2002

Ms. Sherry L. Lee, Executive Director
Texas State Board of Examiners of
Psychologists
333 Guadalupe, Suite 2-450
Austin, Texas 78701

Opinion No. JC-0535

Re: What constitutes a "recognized member of the clergy" for purposes of section 501.004(4) of the Occupations Code, which governs exemptions from the Psychologists Licensing Act (RQ-0503-JC)

Dear Ms. Lee:

You have asked this office how the Texas State Board of Examiners of Psychologists (the "Board") may determine, for the purpose of section 501.004(4) of the Occupations Code (the "Code"), whether to accept particular claims that an individual is exempt from the licensing requirements of the Code on the ground that he or she is a "recognized member of the clergy" who is acting "within the person's ministerial capabilities."[1] TEX. OCC. CODE ANN. § 501.004(4) (Vernon 2002). You ask what guidelines may exist in Texas law or regulation that would define such recognition. In particular, you ask whether a person who has been ordained "via the Internet or mail for a fee" is a recognized member of the clergy. Request Letter, *supra* note 1, at 1. We conclude that, in examining the question of whether a person who purports to be exempt from licensing under the Code is a recognized member of the clergy, the Board may take into account, as one factor, the ordination of that person for a fee by Internet or mail. However, the Board should not conclusively presume that a person is not a recognized member of the clergy based on that factor alone, unless the person provides no other evidence of his or her ministerial activities and religious affiliation other than the Internet or mail order certificate.

Chapter 501 of the Occupations Code, the Psychologists' Licensing Act, establishes the Board and requires those who "engage[] in or represent that [they are] engaged in the practice of psychology" to be licensed by the Board unless they are "exempt under Section 501.004." TEX. OCC. CODE ANN. § 501.251 (Vernon 2002). Section 501.004 exempts "the activity or service of a recognized member of the clergy who is acting within the person's ministerial capabilities" if the clergyman does not describe him- or herself as a psychologist or the services as psychological. *Id.* § 501.004(4). The Board has power to commence an action for injunctive relief to prevent a

---

[1]*See* Letter from Sherry L. Lee, Executive Director, Texas State Board of Examiners of Psychologists, to Honorable John Cornyn, Texas Attorney General (Jan. 29, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

violation of chapter 501. *Id.* § 501.501(a). Engaging in the unlicensed practice of psychology is a Class A misdemeanor. *Id.* § 501.503.

As we understand the situation giving rise to your inquiry, the Board, when seeking to enjoin the unlicensed practice of psychology, is faced with "persons who claim exemption using a ministerial certificate or other ordination procured without training via the mail or Internet." Request Letter, *supra* note 1, at 1. Recognizing the possibility that such claims may be made for the purpose of evading the strictures of the Code, but mindful of the free exercise rights embodied in the First Amendment to the United States Constitution, you inquire as to the criteria by which the Board can distinguish spurious claims of exemption from legitimate ones.

You ask "[w]hat guidelines exist in the laws or regulations of the State of Texas that define 'recognition' of a member of the clergy?" *Id.* We note that the statute governing licensed professional counselors also exempts "a recognized religious practitioner." *See* TEX. OCC. CODE ANN. § 503.054(2) (Vernon 2002). The Texas State Board of Examiners of Professional Counselors has promulgated a rule further defining "[r]ecognized religious practitioner" as "[a] rabbi, member of the clergy, or person of similar status who is a member in good standing of and accountable to a legally recognized denomination, church, sect or religious organization legally recognized under the Internal Revenue Code § 501(c)(3) . . . . " 22 TEX. ADMIN. CODE § 681.2(14) (2002). Such practitioners must be counseling "within the scope . . . of their regular or specialized ministerial duties . . . under the auspices of . . . [their] organization," must be "accountable to [its] established authority," and must not hold themselves out as professional counselors. *Id. See also* TEX. R. EVID. 505 (defining member of clergy for purposes of privileged communications as "a minister, priest, rabbi, accredited Christian Science Practitioner, or other similar functionary of a religious organization or an individual reasonably believed so to be by the person consulting with such individual.").

In our view, the Texas State Board of Examiners of Professional Counselors' rule offers a model that may be of value to you, given its focus on a member of the clergy as a person who has an acknowledged place within some sort of religious organization. In both your statute and that of the licensed professional counselors, an exemption is in effect being offered for pastoral counseling, an activity that implies a relation within and accountability to a religious organization. Moreover, in both cases, the counseling is limited to the clergy member's ministry, in his or her ministerial capacity.

Determining what constitutes a legitimate claim for a religious exemption from generally applicable law and distinguishing such a claim from those asserted for the purpose of evading the effect of such law is a difficult task. In the necessarily factual investigation of whether a claim for religious exemption such as the one about which you have asked is valid or spurious, the Board may rely on a variety of inquiries. By way of example, and in light of the Board of Examiners of Professional Counselors' rule, we note that the Internal Revenue Service has historically relied in this context on a series of questions developed to investigate whether a religious organization may qualify as a church for tax exemption purposes, including, among other things, whether such an

organization has a distinct legal existence, a recognized creed, a distinct ecclesiastical government, a formal code of doctrine and discipline, a distinct religious history, a literature of its own, ordained ministers selected after a prescribed course of study, and regular congregations and services. *See* Scialabba, Kurtzman, and Steinhart, *Mail-Order Ministries Under the Section 170 Charitable Contribution Deduction: The First Amendment Restrictions, the Minister's Burden of Proof, and the Effect of TRA '86*, 11 CAMPBELL L. REV. 27 n.31 (Winter 1988) (citing Internal Revenue Manual); *see also* INTERNAL REVENUE SERVICE, FORM 1023: APPLICATION FOR RECOGNITION OF EXEMPTION, SCHEDULE A (revised 1998) (current Internal Revenue Service questions).

Your particular concern is what once was referred to as "Mail-Order Ministries." *See supra, Mail-Order Ministries*, 11 CAMPBELL L. REV. 1. Such enterprises permit any person, for a small fee or donation, to receive credentials asserting that they have been ordained as clergy. Some recipients have used such credentials in a variety of schemes to avoid the law, and in particular to attempt to evade payment of income taxes. *See, e.g., Church of World Peace, Inc. v. Commissioner*, 67 T.C.M. (CCH) 2282 (1994); *Stephenson v. Commissioner*, 79 T.C. 995 (1983) ("Life Science Church of Allegan"); *Davis v. Commissioner*, 81 T.C. 806 (1983) ("Universal Life Church"). One such ministry is the Universal Life Church of Modesto, California. As the district court notes in *Universal Life Church v. Utah*:

> The ULC will ordain anyone free, for life, without questions of faith. Anyone can be ordained a ULC minister in a matter of minutes by clicking onto the ULC's website and by providing a name, address, and e-mail address. Anyone can also be ordained by mailing to the ULC a name and address. There is no oath, ceremony, or particular form required.
>
> The ULC requires virtually nothing from its ministers: they are not required to perform any religious ceremonies, to oversee a congregation, to provide religious guidance or counseling, to report religious ceremonies to headquarters, to keep in contact with the ULC other than routine address changes, or to attend any worship services.

*Universal Life Church v. Utah*, 189 F. Supp.2d 1302, 1307 (D. Utah 2002).

In *Universal Life Church,* the district court declared unconstitutional on equal protection grounds a Utah statute that distinguished between ministers who applied for their ordination through the Internet or mail from those who had applied "via fax, telephone, or in person." *Id.* at 1317-18. The statute at issue forbade only ministers who had applied for their credentials through the Internet or mail, but not those who applied in another manner, from solemnizing marriages. *See id.* at 1307. While the court dismissed the Universal Life Church's substantive due process claim on the ground that the Utah legislature could reasonably decide that "one who so cavalierly becomes a minister might not appreciate the gravity of solemnizing a marriage," *id.* at 1315-16, it held that a distinction

based solely on the method of application for ordination was "a classification whose relationship to a goal is so attenuated as to render the distinction arbitrary and irrational." *Id.* at 1317-18.

While *Universal Life Church* is not controlling law in Texas, it demonstrates that the Board is better advised not to distinguish between applicants for exemption from the strictures of chapter 501 solely on the basis of the means by which they obtained ordination. The Board may, however, require more information from a person claiming such exemption than the mere production of a ministerial certificate granted by mail or Internet.

Accordingly, while mere Internet ordination, which would appear to be the cyberspace equivalent of mail-order ministry, is a factor which the Board may consider in seeking to enjoin a purported minister from practicing psychology without a license, that factor alone may not be dispositive in every case. The Board should inquire further in seeking to establish whether the person in question has a legitimate claim for exemption as a member of the clergy. If, for example, the facts show that the sole "religious" activity of the person in question is the provision of counseling otherwise indistinguishable from the practice of psychology, or that such counseling is independent of any relationship or accountability to a religious organization of some sort, we believe that the Board would be justified in seeking to enjoin such activity.

## S U M M A R Y

In examining whether a person is a "recognized member of the clergy" acting "within the person's ministerial capabilities" for the purpose of exemption from the licensing requirements of chapter 501 of the Occupations Code, the Texas State Board of Examiners of Psychologists may consider, as one factor, the ordination of that person for a fee by Internet or mail. However, the Board should not conclusively presume that the person may not make a claim for exemption based on that factor alone. The Board should inquire further in seeking to establish whether the person in question has a legitimate claim for exemption as a member of the clergy, and may require more information from a person making such a claim for exemption than the mere production of a ministerial certificate granted by mail or Internet.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee