WILLIAM L. SCHREIBER and JUDITH SCHREIBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schreiber v. Commissioner
Docket No. 12991-80.
United States Tax Court
T.C. Memo 1983-754; 1983 Tax Ct. Memo LEXIS 29; 47 T.C.M. (CCH) 680; T.C.M. (RIA) 83754; December 19, 1983. William L. Schreiber, pro se. Marc J. Winter, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $9,144 and $14,302 in petitioners' Federal income taxes for the calendar years 1976 and 1977, respectively. The deficiencies resulted from adjustments related to investments by petitioners in certain video tapes. After settlement of the video tape issues, *30 petitioners claimed that they were entitled to additional deductions during the years in issue for contributions of real property to the Universal Life Church. The contributions issues were thereafter tried by consent of the parties. FINDINGS OF FACT Petitioners resided in Garden Grove, California, during the years in issue and at the time their petition herein was filed. During 1976 and 1977, Mr. Schreiber was a chief executive assistant for the County of Orange, California, and Mrs. Schreiber was a teacher for the Newport Mesa Unified School District. Petitioners timely filed joint individual income tax returns for 1976 and 1977 with the Internal Revenue Service Center in Fresno, California. Mr. and Mrs. Schreiber have each received "Credentials of Minister" from the Universal Life Church, Modesto, California (ULC Modesto), dated April 28, 1969. In 1970, Mr. Schreiber saw an article in the Wall Street Journal reporting that the Internal Revenue Service had disallowed a charitable contribution made by the pastor of a church because, inter alia, the charter of the church had expired. [1] Petitioners then obtained from the ULC Modesto a certificate identified as "Charter *31 No. 8156," reciting that a congregation "is started this date August 10, 1971" at petitioners' address in Garden Grove, California. The only other charter provisions set forth in the certificate were as follows: Neither party to this agreement is the general agent of the other. The Universal Life Church, Inc. issues this charter in consideration of the signatories' promise that they will indemnify, save harmless, and defend the Universal Life Church, Inc. from all liability from damages to persons or property in any suit at law arising out of this agreement. By this agreement, the Universal Life Church, Inc. hereby authorizes this chartered congregation to open a bank account, or accounts with any other financial institutions, in the name of the Universal Life Church, Inc. [Emphasis added.] On October 30, 1972, petitioners purchased approximately 20.85 acres of property in the County of Riverside, California (the Riverside property), for the sum of $73,500, payable over a 10-year period. From the time of purchase through the time of trial, petitioners paid all costs of acquisition and expenses *32 related to the Riverside property and deducted the interest and taxes paid on their individual income tax returns. The property remained unimproved through the time of trial. OPINION
We are not here concerned with any attempt to interfere with petitioners' right under the First Amendment of the Constitution to free exercise of religion. Their religious activities are not being taxed. The question is whether petitioners may receive an indirect subsidy of a particular activity in the form of tax deductions for their voluntary contributions toward that activity. Deductions are a matter of legislative grace, and the taxpayers must satisfy the specific statutory requirements of the deductions they claim. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioners bear the burden of proving their entitlement to those deductions. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
To secure a deduction for a charitable contribution under section 170(a), (b)(1), and (c), [2] petitioners must establish that they have made an unconditional *33 gift (see DeJong v. Commissioner,309 F.2d 373, 376-379 (9th Cir. 1962), affg. 36 T.C. 896 (1961)) to a qualified entity, and they must establish the value of that gift. Qualified entities under section 170 are essentially those organizations that qualify for an exemption from tax under section 501(c)(3). In analyzing both sections, the United States Supreme Court recently stated: On its face * * * section 170 reveals that Congress' intention was to provide tax benefits to organizations serving charitable purposes. The form of section 170 simply makes plain what common sense and history tells us: in enacting both section 170 and section 501(c)(3), Congress sought to provide tax benefits to charitable organizations, to encourage the development of private institutions that serve a useful public purpose or supplement or take the place of public institutions of the same kind. * * * When the Government grants exemptions or allows deductions all taxpayers are affected; the very fact of the exemption or deduction for the donor means that other taxpayers can be said to be indirect and vicarious "donors". Charitable exemptions are justified on the basis *34 that the exempt entity confers a public benefit--a benefit which the society or the community may not itself choose or be able to provide, or which supplements and advances the work of public institutions already supported by tax revenues. * * * [Fn. refs. omitted; Bob Jones University v. United States, 461 U.S.     (May 24, 1983).] Although the Supreme Court in the Bob Jones University case was ruling on revocation of an exemption to an organization because its religious practices offended public policy, the purpose of section 170 must be kept in mind in deciding cases such as this and particularly in evaluating petitioners' evidence in the light of the applicable burden of proof. Mr. Schreiber testified that the Riverside property was acquired with the intention of donating it to the ULC Modesto and having a church constructed on the property. He further testified that petitioners gave portions amounting to approximately one-quarter of the property to the ULC Modesto in each of the years in issue *35 and that they intend to donate the balance of the property to the ULC Modesto in 1983. Petitioners argue that in April 1976 the Internal Revenue Service acknowledged, by issuance of a determination letter, the deductibility of contributions to the ULC Modesto as a result of a judicial finding that that church qualified as an exempt organization under section 501(c)(3), and that thereafter the contributions were made. See Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974). On their 1976 tax return petitioners deducted contributions of $1,601, including $500 to the ULC Modesto and a $910 carryover of a contribution to the ULC Modesto in an earlier year. Neither of these contributions was shown to be related to the Riverside property, and neither was disallowed by respondent in the notice of deficiency.When they filed their original tax return for 1977, petitioners itemized charitable contributions, identified by check number as well as by recipient and amount, totaling $253 and did not claim a deduction for the purported contribution of an interest in the Riverside property. Mr. Schreiber stated that the contributions now in issue were *36 not claimed on the tax returns as filed because the video tape tax shelter deductions, now settled, eliminated petitioners' tax liability for those years. The tax return for 1977, however, shows that petitioners paid a tax of $1,208 for that year. There is no independent verification of Mr. Schreiber's testimony that the purported gifts occurred during the years in issue.He testified that he and Mrs. Schreiber executed two quit claim deeds dated December 10, 1976, and December 9, 1977, which purport to transfer portions of the Riverside property to "Universal Life Church, Inc., Modesto, California, Charter 8156." The copies of the deeds presented to the Court, however, were not notarized. No such deeds were ever recorded, and record title remains in petitioners' names. The purported quit claim deeds direct that tax statements should be mailed to petitioners' address, and they have continued to pay (and deduct) taxes and other costs related to the property.Petitioners offered in evidence a letter from the ULC Modesto, signed by Bishop R. E. Imbeau, Ph.D., dated September 27, 1983, in which the Modesto church purports to acknowledge acceptance of the deeds. The letter was excluded *37 as hearsay; but, even if it had been admitted, it does not indicate when the purported deeds were first received by the church in Modesto or offer any explanation as to the failure to record the deeds or to put them in a form acceptable for recording (i.e., acknowledged, see Cal. Gov't Code section 27287 (West 1983)). Petitioners have failed to prove that an unconditional gift of property occurred during 1976 or 1977. Similarly, we are not persuaded that the purported contributions, if made, were made to a qualified entity. Petitioners contend that the contributions were made to the ULC Modesto and are deductible because the ULC Modesto is a qualified entity and recognized as such by the Internal Revenue Service.They apparently recognize the futility of arguing that a contribution to their chartered congregation would be deductible as a result of the exempt status of the ULC Modesto. See Davis v. Commissioner,81 T.C. 806, 817 (1983). The purported deeds presented by petitioners, however, on their face reflect a contribution made to petitioners' own "chartered congregation" in Garden Grove, i.e., Chapter 8156. Mr. Schreiber argues that *38 the charter number on the deeds was merely to facilitate filing by the church office in Modesto. It appears from Mr. Schreiber's testimony, however, that a church on the Riverside property is peculiarly a vision of petitioners' and not a project of great interest to the ULC Modesto. The charter documents expressly refute any claim of agency by petitioners on behalf of the ULC Modesto. Petitioners have shown absolutely no exercise of control over the property by the ULC Modesto. Although petitioners had each been "ordained" as ministers of the ULC Modesto in 1969, their "charter" was only secured after Mr. Schreiber learned that a charter might have tax consequences. (So far as we can tell, the only role played by the ULC Modesto in this case was to receive any records petitioners maintained of the purported contributions and to refuse to return those records to petitioners so they could be produced pursuant to subpoena duces tecum served on petitioners prior to trial.) Thus, even if the quit claim deeds purportedly executed by petitioners had been executed on the dates they bear, delivered to the ULC Modesto, and recorded, petitioners' retained control over the property would *39 preclude a finding of deductibility of contributions of the property by petitioners. See Davis v. Commissioner,supra.
Petitioners have not presented any evidence of the value of the interest purportedly transferred other than the cost of the whole parcel of property some years prior to the date of the purported gifts. (They have not even clearly stated how much of a deduction they are claiming.) Thus the deductions could not be allowed even if we were persuaded that petitioners had made a completed gift during the tax years in question to a qualified entity. Decision will be entered under Rule 155.
Footnotes
1. See Blake v. Commissioner,T.C. Memo. 1970-117↩.
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩