WILLIAM SNODGRASS and DONNA K. SNODGRASS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snodgrass v. Commissioner
Docket Nos. 8400-83, 10253-83, 10254-83.
United States Tax Court
T.C. Memo 1984-435; 1984 Tax Ct. Memo LEXIS 233; 48 T.C.M. (CCH) 883; T.C.M. (RIA) 84435; August 14, 1984. William Snodgrass, pro se. Donna Rice for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Section 6653 (a) [1]
Year
Deficiency
Additions to Tax
1979
$5,248.00
$262.40
1980
3,412.00
170.60
1981
4,176.00
208.80
The issues for decision are (1) whether purported contributions in 1979, 1980 and 1981 to the Universal Life Church ("ULC") are deductible; (2) whether any part of petitioners' *234 underpayment of tax for the years in issue was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a); and, (3) whether damages should be awarded to the United States against petitioner pursuant to section 6673. Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in San Jose, California, when they filed their petitions in these consolidated cases. [2]
On their 1979, 1980 and 1981 returns, petitioners claimed charitable contribution deductions of $19,191.00, $13,180.00 and $17,550.00, respective. Respondent disallowed the amounts claimed as charitable contributions and asserted additions to tax under section 6653(a). Petitioners asserted that the contributions were made by checks to the Universal Life Church, of which petitioner William Snodgrass related that he was a trustee. Despite respondent's repeated requests for the original checks, petitioners refused to produce them to substantiate *235 their deductions. OPINION Initally, we must deal with respondent's objection to the introduction into evidence of annual statements from Robert Imbeau ("Imbeau"), Vice-President, ULC, Modesto, California, offered by petitioners to substantiate their contributions. At trial, petitioners introduced into evidence the testimony of Imbeau, who identified the statements in dispute as a summary of the contributions made by petitioner to the ULC, Modesto, in the years in issue. To qualify the statements the witness claimed that they were prepared as summaries from records kept in the normal course of business. The actual records were not in the courtroom at the time of trial. These statements are properly excludable under Rule 1006 of Federal Rules of Evidence.Rule 1006 provides that summaries of voluminous documents may be presented provided, however, that the original source documents themselves are made available to opposing parties. Petitioner refused, despite repeated requests by respondent, to produce any documents underlying the summary statements. Placing source documents at the disposal of the adverse party is the only safeguard against *236 falsification in the preparation of summaries. Here, cross-examination of Imbeau concerning the trustworthiness of the computations and conclusions in the statements was frustrated by the absence of the material claimed to support them. Therefore, we hold that these statements are not admissible. Petitioners assert that they are entitled to deductions for charitable contributions made to the ULC in the years in issue. They bear the burden of proving that they are entitled to the deductions disallowed by respondent. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners argue in support of their deductions that the contributions were made to the ULC, Modesto, itself, and not to their own ULC charter. [3] Petitioners, however, claimed during audit that their "contributions" were made by check to Charter Number 26763. At trial petitioners refused to answer questions on how payments were made, either to the ULC, Modesto, or to their "Church" charter. [4]
*237 Imbeau testified that the Modesto Church had control over all the ULC accounts to which petitioners allegedly contributed. We found Imbeau's testimony to be ambiguous, evasive and devoid of credibility. Imbeau failed to provide any evidence to indicate that petitioners' contributions were to the ULC, Modesto, or that the ULC, Modesto exercised control over the charter account. Petitioners have completely failed to prove that they donated any cash or property to the ULC, Modesto. The record is devoid of any admissible evidence which would substantiate the charitable contribution deductions claimed by petitioners on their 1979, 1980 and 1981 returns. Petitioners, therefore, have failed to carry their burden and we sustain respondent's determination. As to the section 6653(a) additions to tax, petitioners have the burden of proof. Bixby v. Commissioner,58 T.C. 757, 791 (1972). Since they offered no evidence to show that their underpayments of tax were not due to negligence or intentional disregard of the revenue law, we sustain respondent's determinations. The final issue to be decided is whether damages should be awarded to the United States under section *238 6673. Since the petitions herein were filed in 1983, the amended version of section 6673 applies. This section states: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. Since petitioners filed three petitions in this Court, we may grant damages in an amount not to exceed $15,000.00. Prior to trial petitioners were advised that respondent intended to request that we award damages under section 6673, and they were provided with many cases demonstrating their suit's lack of merit. At trial, petitioners refused to answer questions or to produce their cancelled checks. Petitioners actions, manner, demeanor and testimony were evasive and directed at stonewalling respondent's and this Court's efforts to get at the truth. Parties *239 to proceedings before this Court who prefer to play games as opposed to presenting substantive evidence addressing the merits of their case must now pay a price for their frivolity. Upon review of this record, we find that these proceedings were maintained by petitioners primarily for delay and that their position in these proceedings was frivolous and groundless. We admonish petitioners not to maintain further frivolous proceedings before this Court, and we award damages to the United States in the amount of $7,500.00, representing $2,500.00 for each of the proceedings instituted by petitioners herein. Based on the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the Taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. On July 11, 1983, we granted respondent's motion to consolidate these cases for trial, briefing and opinion.↩
3. We have repeatedly held that the ULC, Modesto and the organizations it charters do not constitute one tax-exempt church. See Davis v. Commissioner,81 T.C. 806↩ (1983) and cases cited therein. 4. It is obvious to the Court that petitioners' endeavors before it were directed and maintained to preclude the Court from ascertaining the truth of petitioners' assertions. Petitioners' actions in effect constitute an abuse of the process and proceedings of this Court. As as example of petitioners' unresponsive, evasive and stonewalling tactics they submitted photo copies of purported checks written to the ULC, but would not submit copies of the backs of such checks, and did not produce the original checks. The following excerpts from the record is illustrative: Q. How did you make those payments to that entity? A. I made payments via checks. Q. And how were those checks given to the ULC, Inc., in Modesto, California? What physically happened to the check? A. I don't understand the question. I donated the money to the ULC. Q. How did you deliver the checks? A. I guess I don't understand. Q. To whom did you deliver the checks? She wants to know how and to whom? A. To the trustee of the Universal Life Church. Q. Did you mail them, did you take them in person and deliver them? What did you do? A. Your Honor, can I -- I believe I can decline to answer a question that deals with the Church.↩