THOMAS E. GERRES and BARBARA E. GERRES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gerres v. Commissioner
Docket No. 8095-83.
United States Tax Court
T.C. Memo 1986-573; 1986 Tax Ct. Memo LEXIS 33; 52 T.C.M. (CCH) 1119; T.C.M. (RIA) 86573; December 2, 1986. RuthAnne Tarletz, for the petitioners. Patricia Beary, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioners' 1981 Federal income tax in the amount of $5,827.00. After concessions, the issues for decision are: (1) whether petitioners are entitled to a charitable contribution deduction pursuant to section 170 [1] for payments to the Universal Life Church; (2) whether petitioners' cattle farm was an activity engaged in for profit pursuant to section 183; [2] and (3) whether *35 petitioners are entitled to deduct the cost of petitioner-husband's work clothes pursuant to section 162. For convenience, we have combined our findings of fact and opinion by issues. Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated by this reference. Petitioners resided in Springerville, Arizona, at the time they filed their petition in this case. Universal Life Church Contributions
Petitioners possess a document from the Universal Life Church in Modesto, California, entitled "Universal Life Church, Inc., Charter." The charter refers to a congregation of the Universal Life Church, Inc. in *36 Springerville, Arizona, in which petitioner husband is the minister and petitioner wife is the secretary. On Schedule A of their 1981 joint Federal income tax return, petitioners claimed a charitable contribution to the "Universal Church" in the amount of $7,800. During 1981, petitioners were the sole signatories on a checking account maintained at the First National Bank of Arizona in the name of the Universal Life Church. The address listed for the account was petitioners' post office box number in Springerville, Arizona, and the money deposited to the account came from petitioner husband's wages. Petitioners wrote checks on the account to pay for the electric bills of their cattle farm, union dues for petitioner-husband and petitioners' son, insurance premiums relating to their cattle farm insurance policy, auto insurance on their church and ranch vehicles, pasture rents, telephone bills, cattle feed, cattle registration fees, and entertainment expenses associated with their cattle farm. The burden of proof is on petitioners to show that they are entitled to their claimed charitable contribution deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), *37 Tax Court Rules of Practice and Procedure.
Section 170(a) provides that a deduction is allowed for any charitable contribution as defined in section 170(c). Section 170(c) provides in relevant part that the term charitable contribution means a contribution or gift to or for the use of an entity no part of the net earnings of which inures to the benefit of any private shareholder or individual. Assuming petitioners have substantiated payments totalling $7,800 to the Universal Life Church of Springerville, Arizona, they are not entitled to a charitable contribution deduction. Petitioners' dominion and control over their "church's" checking account and the use of these funds for their personal benefit preclude us from finding that there have been any charitable contributions. See Davis v. Commissioner,81 T.C. 806, 815-819 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985) and the cases cited therein. Petitioners are not entitled to a charitable contribution deduction for payments to the Universal Life Church of Modesto, California. Although petitioners presented receipts for payments to the church, these receipts are not credible *38 evidence. See Davis v. Commissioner,supra at 814, 815. Cattle Activity
Petitioners purchased, bred, raised and sold cattle from 1979 to 1982. Initially, they bought only two calves. In 1980, they bought five more head of cattle and one of their cows had a calf. In 1981, they had 10 cows and, by 1982, they had approximately 57 cows. In 1982, petitioners sold their entire herd of cattle because petitioner husband was "laid off" from his job. During the years 1979 through 1982, petitioner husband was a pipe fitter/welder and, except for November and December, 1982, petitioner wife was unemployed. During the weekdays, petitioner husband usually worked 4 hours a night on cattle-related activities, e.g., feeding, moving hay, fixing fences, drying out stalls and giving medicine. During the weekends, petitioner husband usually worked 8 hours a day on cattle-related activities. Petitioner wife usually worked 5 to 6 hours each day on cattle-related activities. Prior to 1979, petitioners did not have any experience in breeding or raising cattle. They, however, did seek advice from ranchers and an advisor at the University of Arizona Extension Program. *39 Petitioners did not maintain detailed books and records or a separate checking account for their cattle operation. They did keep miscellaneous receipts and a "household budget and expense record" on which they made notations relating to their cattle activity and personal expenses. Petitioner husband projected that petitioners could breed and raise cattle profitably. In each of the years 1979 through 1982, petitioners claimed a net loss on Schedule F of their joint Federal income tax return with respect to their cattle-related activity. In 1981, petitioners claimed a loss of $16,504. Section 183(a) provides generally, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed except as otherwise provided for in that section. Section 183(c) defines "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable * * * under section 162 or * * * paragraph (1) or (2) of section 212." Section 1.183-2(b), Income Tax Regs., provides a list of nine factors to consider in the determination of whether an activity is engaged in for profit. [3] The resolution of the issue is to be based on *40 all the facts and circumstances. Engdahl v. Commissioner,72 T.C. 659, 666 (1979). In order for the taxpayer to prevail, the facts and circumstances must indicate that the taxpayer entered into, or continued, the activity with an actual and honest objective of making a profit. Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In the present case, we have considered all the relevant facts and circumstances, including petitioners' testimony of which some was *41 conflicting and petitioners' exhibits which proved little. Petitioners did not carry on their activity in a business-like manner. They used only one checking account for their personal, "church" related and cattle related expenses. Although petitioner-husband projected that petitioners could breed and raise cattle profitably, there was a complete lack of any organized or detailed books and records of their operations. Petitioners presented miscellaneous, disorganized, and we suspect incomplete, financial records relating to their cattle activity. Said exhibits prove, if anything, that petitioners in no way could have known whether their cattle activity was profitable or not. Petitioners' operations were never profitable. They reported a loss in each of the years 1979 through 1982 on Schedule F of their joint Federal income tax return, and in 1981, the year at issue, reported a loss of $16,504. We conclude that petitioners' cattle raising activities were not an activity engaged in for profit. Work Clothing Deduction
Petitioner-husband was a welder and, as such, purchased fire resistant, 100 percent cotton clothes. The clothing was suitable for general wear. The cost *42 of clothing is generally a non-deductible personal expenditure. See section 262. The cost, however, is deductible under section 162(a) if: (1) the clothing is required or essential in the taxpayer's employment; (2) the clothing is not suitable for general or personal wear; and (3) the clothing is not so worn. Yeomans v. Commissioner,30 T.C. 757, 767-769 (1958). Petitioner husband testified that he only wore the fire resistant clothes at work. Notwithstanding this testimony, the clothes were suitable for general wear. Petitioners are not entitled to deduct the cost of the work clothes. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended. ↩
2. In a related case docketed in this Court, (docket No. 20954-84), involving the taxable year 1980, the parties have stipulated to be bound by the relevant findings of fact and conclusions of law of this opinion. The resolution of the section 183 issue will resolve an issue of whether petitioners are entitled to an investment tax credit claimed on their 1981 Federal income tax return.↩
3. The factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.↩