GEORGE B. GIBBS AND ESTHER GIBBS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gibbs v. Commissioner
Docket Nos. 7540-86, 25469-86
United States Tax Court
T.C. Memo 1988-491; 1988 Tax Ct. Memo LEXIS 519; 56 T.C.M. (CCH) 459; T.C.M. (RIA) 88491; October 12, 1988
J. Richard Staley, for the petitioners. Monica J. Miller, for the respondent. PAJAK
MEMORANDUM FINDINGS OF FACT AND OPINION PAJAK, Special Trial Judge: Respondent determined deficiencies in and additions to petitioners' 1982, 1983, and 1984 Federal income tax as follows: Additions to Tax Under Sections
Year
Deficiency
6653(a)(1)
6653(a)(2)
6659
1982
$ 4,159.02
$ 207.95
*
339.90
1983
$ 4,040.72
$ 202.04 **
474.90
1984
$ 2,884.12
$ 144.21 ***
493.80
*522 (All section references are to the Internal Revenue Code as in effect during the taxable years in question. All rule references are to the Tax Court Rules of Practice and Procedure.) After numerous concessions by both parties, including respondent's concession of the additions to tax under section 6659, the issues for decision are: (1) whether petitioners are entitled to any deductions under section 170 for the taxable years 1982, 1983, and 1984 for alleged charitable contributions to the Universal Life Church; (2) whether petitioners are entitled to any interest expense deductions for the taxable years 1982 and 1983; (3) whether petitioners are entitled to a Schedule C depreciation expense deduction for the taxable year 1984 in the amount of $ 380; (4) whether petitioners are entitled to a cost of goods sold deduction for the taxable year 1983 in the amount of $ 2,556.27; (5) whether petitioners are entitled to a medical expense deduction for the taxable year 1983 in the amount of $ 1,658.50; (6) whether petitioners are liable for any self-employment tax for the taxable years 1982, 1983, and 1984; (7) whether petitioners failed to report interest income for the taxable year 1983 *523 in the amount of $ 118.40; (8) whether petitioners are entitled to business investment loss deductions for the taxable year 1984 totaling $ 5,000; (9) whether petitioners are liable for additions to tax under sections 6653(a)(1) and (2); and (10) whether damages should be awarded to the United States under section 6673. FINDINGS OF FACT To the extent stipulated the facts are so found. Petitioners are husband and wife and resided in Florida when their petitions were filed. During 1982 and 1983, petitioner Esther Gibbs (Mrs. Gibbs) was self-employed in the business of selling weight loss products. During the years 1982 through 1983 and the first five months of 1984, petitioner George P. Gibbs (Mr. Gibbs) was self-employed in the landscape business. Petitioners joined the Universal Life Church of Modesto, California in October 1981. Petitioners sent ULC Modesto some money and received certification that they were ministers. Petitioners were not trained as ministers. Mrs. Gibbs admitted she never used her ministerial status. Petitioners were sole signators over a checking account No. XXX1933 under the name Universal Life Church, No. 45411, which they maintained at the *524 Florida Bank of Volusia County (their ULC account). Mrs. Gibbs kept track of their household records and their ULC account records. Petitioners had no congregation. They attended informal gatherings to discuss the Bible and their beliefs. Neither petitioner performed any baptisms, weddings or funerals. Petitioners had a personal checking account at the Florida Bank of Volusia County (personal account) during 1982 through 1984. Petitioners wrote 36 checks on that personal account payable to the "Universal Life Church" during 1982, 1983, and 1984, in the total amounts of $ 5,080, $ 5,030, and $ 5,712.13, respectively, for a total of $ 15,822.13. Most of these checks were either deposited in petitioners' ULC account or cashed by one of them. Petitioners used the funds from their ULC account to pay utility bills, and to make the insurance and mortgage payments on their house. Four of petitioners' personal checks were endorsed "For Deposit Only, Universal Life Church, Inc., 601-3rd Street, Modesto, Calif., 95351." These checks were cleared in San Francisco, California. Petitioners claimed charitable deductions to the Universal Life Church (ULC) of $ 5,080, $ 5,030, and *525 $ 5,712.13 for 1982, 1983, and 1984, respectively. Petitioners claimed interest expense deductions of $ 2,219.30 and $ 2,483.99 for 1982 and 1983, respectively. In 1984, petitioners claimed $ 380 depreciation expense for a lawn tractor used in Mr. Gibbs' landscape business. Petitioners deducted $ 2,556.27 on their 1983 Federal tax return for the costs of goods sold in Mrs. Gibbs' weight loss products business. Petitioners also claimed $ 3,178.48 in medical expenses for a net deduction of $ 2,055.35 for 1983. Among other matters, respondent disallowed all these deductions. Respondent also determined that petitioners failed to report $ 118.40 of interest income in 1983. Mrs. Gibbs had posted two $ 1,000 Certificates of Deposit (CD's) as security for an $ 1,800 business loan from Atlantic National Bank of Florida (Atlantic Bank) on May 7, 1982. Mrs. Gibbs was unable to repay the note. As a result, the CD's were used by the Atlantic Bank to cover the loan. Petitioners claimed a $ 2,000 business loss deduction on their 1984 return. Respondent disallowed this deduction. Petitioners also claimed they loaned $ 2,500 in June 1981 to Mr. Edmond A. Glos, II, President, Hybri-Car *526 Conversion, Inc., Orlando, Florida, payable with 25% simple annual interest on or before December 31, 1981. Mr. Glos allegedly was an inventor who had built a carburetor which would get excellent mileage and who needed financing for his invention. Petitioners claimed he was introduced to them by their friend, Mr. William H. Wakeman, Jr., who allegedly was involved in this matter. Petitioners claimed Mr. Glos did not repay the loan and took a $ 3,000 business investment loss on their 1984 return. Respondent disallowed this deduction. Respondent determined that petitioners were liable for self-employment taxes for the taxable years 1982, 1983, and 1984. Respondent also determined the additions to tax set forth above. OPINION Charitable Contributions
In addition to other unsubstantiated claims, petitioners present yet another unfounded claim to deductions for alleged contributions to the ULC. This Court alone has considered over 130 ULC cases. Burwell v. Commissioner,89 T.C. 580, 597 (1987). The Court of Appeals for the Eleventh Circuit, to which an appeal of this case would lie, has characterized the appeal of such cases as frivolous. Harrison v. Commissioner,805 F.2d 973, 974 (1986), *527 affg. per curiam an unreported opinion of this Court. We agree with the statement in Wedvik v. Commissioner,87 T.C. 1458, 1465 (1986), that, like the many preceding ULC cases, petitioners' claims "do not even pass the smell test." It is well-established that deductions are a matter of legislative grace, and that a taxpayer must satisfy the specific statutory requirements for the deductions claimed. Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). A taxpayer bears the burden of proving his entitlement to the deductions he claims. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a).
A charitable contribution or gift is allowed as a deduction under section 170 if it is made to an entity organized and operated exclusively for religious or charitable purposes, provided that none of the net earnings of the organization inure to the benefit of a private individual. Section *528 170(c) provides in pertinent part as follows: SEC 170(c). CHARITABLE CONTRIBUTION DEFINED. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, fund, or foundation -- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * Petitioners drew checks made payable to the Universal Life Church. They then either deposited the checks in their ULC account or cashed the checks for personal use in the amount of at least $ 14,412.16 for the 1982, 1983, and 1984 tax years. During those years, *529 four of the checks in the amount of $ 1,409.97 were run through a Modesto, CaliforniaULC account. Petitioners claim all these contributions were made to the Universal Life Church. This assertion is unfounded since petitioners failed to show that any gift had been made. The term "charitable contribution" as it is used in section 170 is largely synonymous with the term "gift." A gift is generally defined as a voluntary transfer of property to another without consideration. Petitioners failed to prove that a transfer of funds had been made or that any other person had control over their ULC account or over the other four checks. Without a transfer of property to another, no gift occurs because the funds remain under petitioners' dominion and control. Davis v. Commissioner,81 T.C. at 817. Moreover, the record overwhelmingly establishes that the deposits to their ULC account inured to petitioners' benefit. Section 170(c)(2)(C); Miedaner v. Commissioner,81 T.C. 272, 281 (1983); McGahen v. Commissioner,76 T.C. 468, 482-483 (1981), *530 affd. without published opinion 720 F.2d 664 (3d Cir. 1983). Petitioners wrote checks on their ULC account to pay for their utility bills and to make insurance and mortgage payments on their house. At the trial, Mrs. Gibbs stated that: "We [Mr. and Mrs. Gibbs] were given [by the Universal Life Church] the authority to accept donations to the church, and to draw -- make withdrawals on the deposits that were made in the name of the church." Subsequently, Mrs. Gibbs admitted that the funds allegedly contributed by petitioners to their ULC account were used to pay their personal expenses. Petitioners' assertion that the payment of their personal expenses from the fund in their ULC account was deductible as a parsonage allowance in specious. Section 107 provides in pertinent part that in the case "of a minister of the gospel, gross income does not include * * * the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home." Section 107 allows an exclusion from income of compensation paid to a minister by a religious organization *531 for money expended on housing. The parsonage allowance exclusion does not allow the exclusion of compensation from other sources. Mrs. Gibbs admitted at trial that only petitioners' funds were deposited into their ULC account. Petitioners did not receive any compensation from a religious organization. They cannot exclude compensation from other sources under section 107. The four checks representing alleged charitable contributions to the Universal Life Church, Modesto, California, are insufficient to substantiate a charitable contribution. Petitioners have not shown that a contribution was made to an entity organized and operated exclusively for charitable or religious purposes, and that none of the net earnings of the organization inured to the benefit of petitioners or other individuals. The endorsement stamps reading "Universal Life Church, Inc., 601-3rd Street, Modesto, Calif., 95351" are insufficient to show that the funds were transferred to a charitable organization and that the net earnings did not inure to the benefit of petitioners or other individuals. While there is no evidence that petitioners had signatory control over a ULCCalifornia account, petitioners' *532 testimony regarding the four checks sent to Modesto was vague, evasive, and unbelievable. Since petitioners have failed to meet their burden of showing they made any valid charitable contributions, we uphold respondent's determination on this issue. Reacting to the frivolous nature of a ULC case, the Court of Appeals for the Eleventh Circuit imposed double costs in favor of respondent and against the taxpayer. We find apposite the following statement of the Eleventh Circuit: We note that other taxpayers have attempted to avoid payment of taxes through claimed contributions to the Universal Life Church and in those cases have attempted the same tactics as the taxpayers here. If there are similar frivolous appeals of other cases, as frivolous as this, we would be inclined to assess attorney's fees in addition to doubling the costs. [Harrison v. Commissioner,805 F.2d 973, 974 (11th Cir. 1986), affg. per curiam an unreported opinion of this Court.]
As stated, an appeal of this case would lie to the Eleventh Circuit. Interest Expense
Under section 163, a *533 taxpayer is allowed a deduction for "all interest paid or accrued within the taxable year on indebtedness." We have determined that petitioners' deposits into their ULC account were not charitable contributions but remained petitioners' funds. Thus, petitioners used their own funds to make interest payments through their ULC account. Accordingly, we find (and based on our determination as to charitable contributions, respondent agrees) that petitioners are entitled to the interest expense deductions in 1982 and 1983 in the amounts of $ 2,219.30 and $ 2,483.99, respectively. Section 163. Schedule C Depreciation Deduction
A reasonable allowance for exhaustion, wear and tear on property used in a business may be claimed as a depreciation deduction under section 167. An asset shall not be depreciated below a reasonable salvage value. Section 1.167(a)-1, Income Tax Regs. The taxpayer is required to deduct the proper depreciation allowance each year. The period of depreciation begins when the asset is placed in service and ends when the asset is retired *534 from service. A part of one year's depreciation is allowed for the first and last year during which the asset is in service. Section 1.167(a)-10(b), Income Tax Regs. Retirement of an asset is "the permanent withdrawal of depreciable property from use in the trade or business * * *." Section 1.167(a)-8(a), Income Tax Regs.
Petitioners claimed $ 380 of depreciation for 1984 on a lawn tractor used in Mr. Gibbs' business, which is a full year's depreciation. The parties stipulated that Mr. Gibbs was in the business for only a partial year in 1984. In addition, Mr. Gibbs admitted on his 1984 tax return that he was retired. Since Mr. Gibbs permanently withdrew the lawn tractor from service in May 1984, at best petitioners are only entitled to deduct 5/12's of a full year's depreciation in 1984. Petitioners were depreciating the lawn tractor on a straight line basis over a five year life. However, since petitioners' returns show only that "1979" was the "date" the tractor was acquired, it is possible that petitioners are not entitled to any depreciation deduction in 1984 after taking into account the depreciation allowed *535 or allowable in earlier years plus the salvage value. Section 1.167(a)-1 and 1.167(a)-10(b), Income Tax Regs. This will have to be resolved in the Rule 155 computation. Cost of Goods Sold
The cost of goods purchased for resale in a taxpayer's business is deducted from gross sales in computing gross income. Section 1.162-1(a), Income Tax Regs.
Respondent disallowed petitioners' claimed $ 2,556.27 deduction for the cost of goods sold in Mrs. Gibbs' business in 1983. Petitioners have the burden of proving that respondent's determination is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Since petitioners have failed to introduce any evidence showing they are entitled to this adjustment, they have not met their burden of proof. Respondent's determination is sustained. Medical Expense Deduction
Taxpayers may deduct medical expenses in excess of five percent of taxpayer's adjusted gross income under section 213. (For tax *536 years beginning after December 31, 1986, the percentage has been changed to 7.5 percent. See Tax Reform Act of 1986, Pub. L. 99-514, section 133, 100 Stat. 2116.) Petitioners claimed $ 3,178.48 in medical expenses for a net deduction of $ 2,055.35 on their 1983 tax return. Prior to trial, petitioners conceded $ 1,519.98 of the medical expenses, leaving $ 1,658.50 in total medical expenses at issue. Since petitioners have offered no evidence showing they are entitled to a medical expense deduction, they have not met their burden of proof. We uphold respondent's determination. Self-Employment Tax
A taxpayer is liable for self-employment tax on net earnings pursuant to section 1401. Net earnings is defined as "the gross income derived by an individual from any trade or business carried on by such individual," less the allowable deductions pertaining to such trade or business. Section 1402. Respondent determined that petitioners were liable for self-employment taxes for taxable years 1982 through 1984. Petitioners have admitted to being self-employed by submitting Schedule C *537 (Profit or (Loss) From Business or Profession) with their 1040 forms for all three tax years at issue, except no Schedule C was submitted in 1984 for Mrs. Gibbs because she was not in business during that year. Petitioners also admitted at trial that they had been in business for themselves during the specified years. Respondent's determinations as to self-employment taxes are upheld to the extent that petitioners have net earnings during these years. Unreported Income
Interest is one item included in gross income. Section 61(a)(4). Respondent determined that petitioners had unreported interest income in the amount of $ 118.40. Once again, petitioners have failed to introduce any evidence showing that they did not receive the interest income at issue. Since they have not met their burden of proof, respondent's determination is sustained. 1984 Business Losses
The issue here is whether Mrs. Gibbs had a deductible business loss when the Atlantic Bank claimed her CD's because Mrs. Gibbs defaulted on her loan. Petitioners contend that this is a deductible loss incurred in a business because Mrs. Gibbs used the loan funds to purchase inventory for her business. *538 Section 165 requires that a business loss be evidenced by closed and completed transactions, fixed by identifiable events, and, with exceptions irrelevant here, actually sustained during the taxable year. Section 1.165-1(b), Income Tax Regs. Petitioners failed to introduce any evidence which showed that the CD's were actually claimed by the bank or that the loss actually occurred in the 1984 taxable year. Even if such evidence existed, petitioners would have suffered only a $ 200 loss ( $ 2,000 of CD's less $ 1,800 of inventory). Since petitioners have not proven a closed and completed transaction and that the loss was sustained during 1984, respondent's determination is upheld with respect to the disallowance of the $ 2,000 claim. Respondent also disallowed petitioners' claim for a $ 3,000 business investment loss in 1984. Petitioners contend that in June 1981 they loaned $ 2,500 to Mr. Edmund A. Glos repayable in December 1981 at 25% simple interest. Petitioners were unable to prove they made this loan to Mr. Glos. They did not produce a cancelled check to show a payment of loan proceeds to *539 Mr. Glos. Neither Mr. Glos nor Mr. William Wakeman testified as to the validity of petitioners' claim. The only evidence introduced by petitioners was a letter from them to Mr. Glos requesting payment on a loan. This letter had been returned unopened to petitioners. Finally, petitioners have not shown that a loss occurred in 1984. Petitioners offered no evidence indicating when Mr. Glos allegedly defaulted on a loan. Petitioners did not explain their claim of a $ 3,000 ordinary loss on a $ 2,500 loan. Petitioners have failed to prove with identifiable events that they incurred a $ 3,000 loss in 1984. Respondent's determination is sustained as to the disallowance of this $ 3,000 claimed loss. Additions to Tax
Respondent also determined that petitioners are liable for additions to tax under section 6653(a)(1) and (2). Petitioners bear the burden of proving that the underpayment was not due to negligence or intentional disregard of the rules and regulations. Axelrod v. Commissioner,56 T.C. 248, 258 (1971). Petitioners deliberately understated their tax *540 liability by claiming charitable contribution deductions and other deductions which were without substance in law or in fact. Petitioners were negligent in claiming these deductions and respondent's determinations are sustained. Burwell v. Commissioner,89 T.C. 580, 594 (1987). Section 6673 Damages
Congress has granted this Court the authority to award the United States damages up to $ 5,000 whenever it appears to this Court that the proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings was frivolous or groundless. Section 6673. Although respondent conceded a number of issues before trial, and certain issues were questions of fact, petitioners' position was replete with repetitive and worthless tax protester arguments. Petitioners should not be permitted to waste the Court's time and resources by bringing frivolous and groundless positions before the Court and escape liability under section 6673 merely because they have other issues to be decided. See Hyslep v. Commissioner,T.C. Memo. 1988-289; *541 Rager v. Commissioner,T.C. Memo. 1984-563, affd. 775 F.2d 1081 (9th Cir. 1985). (In addition to sustaining this Court's award of damages under section 6673, the Ninth Circuit imposed double costs and $ 1,000 attorney's fees for which the taxpayers and their counsel were jointly and severally liable. Rager v. Commissioner, 775 F.2d at 1083-1084.) In Rager,section 6673 damages were awarded in a case where the taxpayer asserted a frivolous ULC argument and an unrelated argument. To the same effect, see Hyslep v. Commissioner, supra.
This Court has held numerous times that a taxpayer's liability for tax cannot be escaped by establishing a ULC bank account and then paying personal expenses from the funds in that account. Burwell v. Commissioner,89 T.C. 580 (1987); Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). Petitioners were informed by respondent about the provisions of section 6673 and that this Court *542 had repeatedly found actions based on ULC contributions to be without merit. Petitioners nevertheless maintained these actions and delayed their determination by failing to produce documentary evidence until trial. Petitioners' waste of the Court's time and resources on a case based on grounds previously determined and their failure to cooperate with preparation for trial are a disservice to taxpayers with legitimate issues to be determined. We find the proceedings in this case were instituted and maintained primarily for delay and that petitioners' primary position in these proceedings is frivolous and groundless. Damages will be awarded to the United States in the amount of $ 5,000. Decision will be entered under Rule 155.
Footnotes
*. 50 percent of the interest due on the $ 4,089.02 underpayment due to negligence. ** 50 percent of the interest due on the $ 4,040.72 underpayment due to negligence. *** 50 percent of the interest due on the $ 2,829.12 underpayment due to negligence.↩